## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE MCGRAIN, : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | CIVIL ACTION |
| CITY OF PHILADELPHIA, et al., : | |
| Defendants. : | NO. 06-0340 |
| : | |

**Memorandum and Order**

YOHN, J.                                                                                           September ___, 2006

      This case arises from the serious injuries that plaintiff Denise McGrain suffered after jumping or falling through the window of her third-story hotel room. McGrain has brought an action against defendants Police Officer Domenick Ficchi, Police Officer Zachary Kuzawsky, and the City of Philadelphia, presenting a Fourteenth Amendment substantive due process claim and several state law claims. Presently before the court is defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(6). For the reasons set forth below, the motion to dismiss will be granted and McGrain's claims will be dismissed without prejudice to her right to file an amended complaint.

**I.    Factual and Procedural Background**[1]

      On January 29, 2004, McGrain was staying at an Embassy Suites Hotel in Philadelphia. (Compl. ¶ 18.) She was abusing drugs and possibly alcohol and was suicidal. (Compl. ¶ 18.) Upon becoming aware of this situation, McGrain's family traveled to the hotel and summoned

---

[1] The factual account accepts all allegations in the complaint as true. *See Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

the Philadelphia Police Department. (Compl. ¶ 19.) Defendants Ficchi and Kuzawsky arrived on the scene, and McGrain's family exhorted the officers to commit McGrain to a psychiatric hospital to prevent McGrain from harming herself. (Compl. ¶ 20.) The officers brought McGrain to the lobby of the hotel, but refused to commit her. (Compl. ¶ 21.) They explained that they lacked the authority to make such a commitment. (Compl. ¶ 22.)

After the officers refused to commit McGrain, McGrain's family traveled to Mercy Hospital in Philadelphia, obtained a doctor's signature authorizing commitment, and returned to the hotel. (Compl. ¶ 23.) By the time McGrain's family returned to the hotel, three hours had passed from the time they left. (Compl. ¶ 24.) The family again summoned the police. (Compl. ¶ 24.) The police arrived, but were unable to persuade McGrain to unlock her hotel room and let them in. (Compl. ¶ 24.) Around this time, McGrain fell or jumped from her third-story window. (Compl. ¶ 25.) She sustained a variety of injuries, including inferior and superior rami fractures, bilateral sacral fractures, a left tibial fracture, and a left calcaneal fracture. (Compl. ¶ 30.)

On January 25, 2006, McGrain filed a seven-count complaint in this court against defendants City of Philadelphia, Officer Ficchi, and Officer Kuzawsky. She brings claims under 42 U.S.C. § 1983, alleging violations of her rights under the Fourth and Fourteenth Amendments; specifically, she claims that she "was deprived of her right to be secure in her person and property and to due process and equal protection of the law and deprived of her right to prompt and appropriate medical care and attention." (Compl. ¶ 43.) She also brings state law claims against the officers alleging violation of the Pennsylvania Constitution, violation of the duty to protect, reckless disregard of safety, infliction of emotional distress, and negligence. On February 22, 2006, the defendants filed a motion to dismiss all claims pursuant to Federal Rules

of Civil Procedure Rule 12(b)(6).

**II.     Standard of Review**

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is testing the sufficiency of a complaint. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In making its ruling, the court must accept as true all well-pled allegations of fact in the plaintiff's complaint, and any reasonable inferences that may be drawn therefrom, to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). "The issue is not whether [the claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997). Courts will grant a motion to dismiss "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

**III.    Discussion**

The defendants seek dismissal of all of McGrain's claims. They argue that her federal constitutional claims should be dismissed because the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals, and because the officers have qualified immunity. They further argue that the state law claims should be dismissed because the officers have immunity under the Pennsylvania Political Subdivision Tort Claims Act and the Mental Health Procedures Act. For the reasons that follow, the court will dismiss without prejudice McGrain's federal constitutional claims for failure to state a claim upon which relief may be granted. Further, the court will decline to exercise supplemental

jurisdiction over McGrain's state law claims pursuant to 28 U.S.C. § 1367(c)(3), and therefore those claims will also be dismissed without prejudice.  However, the plaintiff will be given the opportunity to file an amended complaint.

### A. Constitutional Claims Against Individual Defendants

McGrain brings her constitutional claims pursuant to 42 U.S.C. § 1983, which "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979).  To obtain relief under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of state law, violated the plaintiff's federal constitutional or statutory rights.  *Sameric Corp. of Del., Inc. v. City of Philadelphia,* 142 F.3d 582, 590 (3d Cir. 1998).  Here, McGrain alleges that the defendants violated her rights to substantive due process under the Fourteenth Amendment.[2]  She alleges that "Defendants Ficchi and Kuzawsky knew or should have known that failing to call an ambulance and/or failing to transport Plaintiff to the hospital/psychiatric facility and/or failing to have Plaintiff committed, placed Plaintiff in danger and increased the risk to her health and safety" (Compl. ¶ 40), and that "Defendants Ficchi and Kuzawsky were without the right or privilege to fail to obtain the needed medical/psychiatric attention for a person in need of such attention" (Compl. ¶ 42).

However, in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S.

---

[2] In her complaint, McGrain also claims that her Fourth Amendment rights were violated.  However, the Fourth Amendment protects against unreasonable searches and seizures, U.S. Const. amend. IV., and McGrain never alleges that she was unreasonably searched or seized.  Further, her Answer did not respond to defendants' argument that any claim concerning the Fourth Amendment should be dismissed.  Accordingly, the court will dismiss McGrain's Fourth Amendment Claim.

189 (1989), the Supreme Court held that in general, the Due Process Clause does not impose a duty upon the state to protect citizens. In *DeShaney*, a boy (Joshua) and his mother brought suit against social workers and local officials after Joshua was beaten and permanently injured by his father, alleging that his Fourteenth Amendment due process rights were violated by the defendants' failure to remove him from his father's custody. *Id.* at 191. The defendants had suspected that Joshua was the victim of child abuse and even went so far as to obtain a court order placing Joshua in the temporary custody of a hospital. *Id.* at 192-93. However, the defendants ultimately returned Joshua to his father's custody, where Joshua was severely beaten. *Id.* at 193.

In denying plaintiffs' claim, the Supreme Court explained that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196. The Court thus held that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

Plaintiffs argued that there was a special relationship between Joshua and the state because the state had taken some steps to protect Joshua from his father, and that as a result of this special relationship, the state acquired a duty to protect Joshua in a "reasonably competent fashion." *Id.* at 197. The Court rejected this argument, concluding that while "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals," *id.* at 198, this is only the case "when the State takes a person into its custody and holds him there against his will," *id.* at 199-200. The Court explained

that Joshua was not injured while in state custody, but while in the custody of his father.  *Id.* at 201.  The Court further explained that the fact that "the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter."  *Id.*  Thus, the Court found that the plaintiffs had failed to establish a due process violation.  *Id.* at 203.

The Third Circuit has applied this rule to rescue services.  *See Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473 (3d Cir. 2003).  In *Brown*, the parents of a child who died after choking on a grape brought a civil rights action against emergency medical personnel.  *Id.* at 475.  The child's parents had called 911 three times before help arrived, *id.* at 475-76, and alleged that the response of the emergency medical technicians (EMTs) was incompetent because the EMTs first got lost on their way to the house, and then, upon arriving, failed to "exercise the well-established and universally recognized protocols for choking situations," *id.* at 481.  The Third Circuit first acknowledged the "basic tenet of tort law that although an individual generally has no duty to rescue, once voluntarily undertaken, a rescue must not be performed negligently."  *Id.* at 477.  However, the court emphasized that "'the Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation.'"  *Id.* at 478 (quoting *DeShaney*, 489 U.S. at 202) (alteration in original).  The court ultimately joined other circuits in ruling that "there is no federal constitutional right to rescue services, competent or otherwise."  *Id.*

However, the Third Circuit has identified two exceptions to this general rule.  *Sanford v.*

6

*Stiles*, No. 04-4496, 2006 WL 2161404, at *3 (3d Cir. Aug. 2, 2006). These exceptions are applicable in cases where: (1) a special relationship exists between the state and the individual, or (2) a state-created danger is involved. *Id.* Thus, in order for McGrain to make out a due process violation, she must allege that one of the two exceptions applies. In this case, McGrain argues that she fell victim to a state-created danger.

> A meritorious state-created danger claim includes four essential elements:
>
> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Sanford*, 2006 WL 2161404, at *4.

The defendants argue that McGrain has failed to allege the second and fourth elements of this test. Because the court will rule that McGrain has thus far failed to present a claim on which relief may be granted concerning the fourth element, the court will not consider defendants' arguments concerning the second element.

In describing the fourth element, the Third Circuit has emphasized that "'[l]iability under the state-created danger theory is predicated upon the states' *affirmative* acts which work to the plaintiffs' detriments in terms of exposure to danger.'" *Bright v. Westmoreland County*, 443 F.3d 276, 282 (3d Cir. 2006) (quoting *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1374 (3d Cir. 1992) (en banc)) (alteration in original). The fourth element also includes a causation requirement: there must be "a direct causal relationship between the

7

affirmative act of the state and plaintiff's harm." *Kaucher v. County of Bucks*, 455 F.3d 418 (3d Cir. 2006).

These two requirements – that the state take some affirmative action and that that action have a causal relationship with plaintiff's harm – are illustrated by the cases in which the Third Circuit has found that the fourth element has been established. The first such example is *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996). In *Kneipp*, police officers stopped Joseph and Samantha Kneipp on the street for causing a disturbance. *Id.* at 1201. The couple was walking home from a tavern, and Samantha was extremely intoxicated, to the point that she smelled of urine and was at times unable to walk without Joseph's assistance. *Id.* The police officers talked to both individuals, and eventually allowed Joseph to go home to relieve a babysitter. *Id.* at 1201-02. After Joseph left, the police officers let Samantha leave unaccompanied, *id.* at 1202; she was later found unconscious at the bottom of an embankment, and ultimately suffered serious brain damage, *id.* at 1203. In reviewing Samantha's legal guardians' due process claim, the court concluded that the police officers, in separating Samantha from Joseph and then leaving Samantha to travel home alone, had "made Samantha more vulnerable to harm." *Id.* at 1209. The court explained:

> It is conceivable that, but for the intervention of the police, Joseph would have continued to escort his wife back to their apartment where she would have been safe. A jury could find that Samantha was in a worse position after the police intervened than she would have been if they had not done so. As a result of the affirmative acts of the police officers, the danger or risk of injury to Samantha was greatly increased.

*Id.*

Similarly, in *Rivas v. City of Passaic*, 365 F.3d 181 (3d Cir. 2004), the Third Circuit found that the fourth element had been established. In *Rivas*, EMTs who were on the scene to

help Rivas after he suffered a seizure had a confrontation with him. *Id.* at 185. The EMTs then called the police and informed them that there had been a confrontation, but said nothing of Rivas's medical condition. *Id.* at 185-86. The police arrived, engaged in a protracted struggle with Rivas, and he died. *Id.* at 186-88. In ruling on Rivas's family's state-created danger claim, the court held that the acts of the EMTs in calling the police but failing to describe the Rivas's medical condition "created an opportunity for harm that would not have otherwise existed." *Id.* at 197. "Were it not for those acts, Mr. Rivas presumably could have remained in the apartment's bathroom for the duration of his seizure without incident." *Id.*; *see also Estate of Smith v. Marasco*, 318 F.3d 497, 510 (3d Cir. 2003) (holding that the decisions to activate a Special Emergency Response Team against Smith, "flush Smith from his home, confine him to the densely wooded area, block his route of return, reject the use of search dogs, not allow family or friends to communicate with him over the PA system, and search only a short distance into the woods . . . created just such an opportunity [for harm to befall Smith]").

On the other hand, the Third Circuit has found that claims have not satisfied the fourth element of the state-created danger test where the state did not take an affirmative act or where the act did not cause the harm that occurred. For example, in *Kaucher*, a corrections officer and his wife alleged that they contracted a disease due to the prison affirmatively creating dangerous conditions and affirmatively misrepresenting dangers. 2006 WL 2136542, at *1. However, the Third Circuit rejected these arguments, because "at base, both aspects of their claim allege failures to take actions sufficient to prevent the Kauchers' infections." *Id.* at *12. The court then reiterated that "failures to act cannot form the basis of a valid § 1983 claim." *Id.* at *12 n.11. Further, while the prison did take an affirmative act in distributing a memorandum discussing

(and perhaps understating) the degree of infection in the prison, it did not constitute a due process violation because "the memorandum was not the 'but for cause' of the Kauchers' infections"; rather, "[t]here had always been cases of staph infections at the jail." *Id.*

Similarly, in *Sanford*, the court also found that the fourth element had not been satisfied. 2006 WL 2161404, at *10-*11. In *Sanford*, the mother of Michael, a boy who had committed suicide, brought a state-created danger claim against the guidance counselor at Michael's school, alleging that her actions increased the risk that Michael would commit suicide. *Id.* at *3. The guidance counselor had met with Michael about two weeks before he committed suicide after being given a note in which Michael stated that the actions of his ex-girlfriend "almost made [him] want to go kill [him]self." *Id.* at *1-*2. After meeting with Michael, the guidance counselor was convinced that Michael was not at risk, and therefore took no further action. *Id.* at *2. The court rejected Sanford's attempt "to recharacterize Stiles' failures as affirmative actions," and reiterated that "mere failure to protect an individual . . . does not violate the Due Process Clause." *Id.* at *11. *See also Bright v. Westmoreland County*, 443 F.3d 276, 284 (3d Cir. 2006) (finding no liability under state-created danger theory because "there can be no liability in the absence of an affirmative exercise of state authority"); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 915-16 (3d Cir. 1997) (fourth element not satisfied because the one arguably affirmative act of the defendants – leaving unlocked the back door to a school through which the plaintiff's attacker entered – lacked the necessary direct causal relationship to the harm that befell plaintiff).

McGrain's allegations all center on actions that the state did not take: allegedly, the state was guilty of "failing to call an ambulance and/or failing to transport Plaintiff to the

hospital/psychiatric facility and/or failing to have Plaintiff committed" (Complaint ¶ 40), and "fail[ing] to obtain the needed medical/psychiatric attention" (Complaint ¶ 42). These allegations, by their very terms, refer to a failure to act instead of an affirmative action. The Third Circuit has unequivocally held that liability under the state-created danger theory must be based on an *affirmative* action of the state. McGrain has made no such allegation. At bottom, she has alleged only that the state failed to protect her from herself and failed to provide competent rescue services. As noted above, such claims do not constitute due process violations, *see DeShaney*, 489 U.S. at 196; *Brown*, 318 F.3d at 478, and accordingly, McGrain has failed to present a claim on which relief may be granted. She has not specifically alleged that the officers placed her in a dangerous position. She has not stated the officers used their authority "to create an opportunity that otherwise would not have existed" for her to harm herself. *Kneipp,* 95 F.3d at 1208.

   Further, the fact that the state may have temporarily had McGrain in custody in the hotel's lobby is not determinative. In *DeShaney*, where the state had taken Joshua into temporary custody, the Supreme Court stressed that "the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." 489 U.S. at 201. The Supreme Court was satisfied that when the state returned Joshua "to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all." *Id.*; *see also Bright v. Westmoreland County*, 380 F.3d 729, 736 (3d Cir. 2004) (explaining that "[t]he Supreme Court found, in *DeShaney*, that simply because a state actor releases a person he or she had previously taken into custody, the state actor does not, *ipso facto*, owe a continuing duty to protect the person or others from the person"). Similarly, in *Kneipp*, the Third Circuit found

liability not just because the state had stopped Samantha and then failed to take proper care of her, but because it had left her in a worse situation than it had found her by separating her from her private source of aid. 95 F.3d at 1209. Here, McGrain does not allege that the state's actions in bringing her to the lobby and then allowing her to return to her hotel room rendered her "more vulnerable to danger than had the state not acted at all," *Sanford*, 2006 WL 2161404, at *4. Moreover, the complaint does not make clear when the plaintiff was allegedly in police custody, whether the police left her in family custody, whether the family left her in police custody or whether she left them all. Accordingly, she has not alleged a claim on which relief may be granted. Thus, the court will dismiss her due process claim against defendants Ficchi and Kuzawsky.[3]

### B. Constitutional Claims Against City

If the court had determined that McGrain had alleged that her constitutional rights had been violated, the court would have had to consider whether the City of Philadelphia could be held liable. However, "the initial inquiry under . . . [the] doctrine of municipal liability asks whether the plaintiff asserted a violation of a cognizable constitutional right." *Kaucher*, 2006 WL 2136542, at *3 n.2. Because the court has ruled that McGrain has failed to state a claim alleging a constitutional violation, it follows that McGrain's due process claims against the city must also be dismissed. *Id.*

### C. State Law Claims

McGrain has also presented several state law claims. The only basis for the court's

---

[3] Because the court has ruled that McGrain's constitutional rights were not violated, the court need not consider the defendants' alternative argument that the officers are protected by qualified immunity. *See, e.g.*, *Kaucher*, 2006 WL 2136542, at *3 n.2.

jurisdiction over these claims is that of supplemental jurisdiction, as set forth in 28 U.S.C. § 1367. Under § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, pursuant to § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." Here, all of McGrain's federal claims will be dismissed, and the court will use its discretion to decline the exercise of supplemental jurisdiction over the state law claims. Accordingly, I will dismiss these claims without prejudice for lack of jurisdiction.

        D.      **Constitutional Claim Proffered for First Time in Motion**

In Plaintiff's Answer to Defendant's Motion to Dismiss, McGrain proffers, for the first time, an allegation that the officers "sent the family away from the hotel" and thus separated McGrain from her family. (Pl.'s Answer 6.) However, McGrain did not include this allegation in her complaint, and "[t]he court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)." 17 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2006); *see also Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994) (explaining that in considering a motion to dismiss, "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record"); *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to

dismiss.") (alteration in original, internal quotation marks omitted).  However, because I cannot conclude at this stage that such a claim would be futile, I will dismiss McGrain's complaint without prejudice to her filing an amended complaint.  *See Alston v. Parker*, 363 F.3d 229, 235-36 (3d Cir. 2004).

      An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE MCGRAIN, : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | CIVIL ACTION |
| CITY OF PHILADELPHIA, et al., : | |
| Defendants. : | NO. 06-0340 |
| : | |

## Order

AND NOW, this _____ day of September, 2006, upon consideration of defendants City of Philadelphia, Domenick Ficchi, and Zachary Kuzawsky's Motion to Dismiss Plaintiff's Complaint (Doc. No. 2), plaintiff Denise McGrain's answer, and defendants' reply, IT IS HEREBY ORDERED that defendants' motion is GRANTED and:

1. Plaintiff's federal constitutional claims (Counts I and II in the complaint) are dismissed for failure to state a claim on which relief may be granted, without prejudice to plaintiff's right to file an amended complaint within twenty days of the date of this order.

2. Pursuant to 28 U.S.C. § 1367(c)(3), the court will decline to exercise supplemental jurisdiction over plaintiff's state law claims (Counts III-VII in the complaint), and those claims are also dismissed without prejudice.

s/William H. Yohn Jr.<br>
William H. Yohn Jr., Judge